O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SEAN SUMMERVILLE, an individual, | ) | Case No. 20-cv-10944 DDP (AFMx) |
| Plaintiff, | ) ) ) | **ORDER GRANTING DEFENDANT'S MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRSTAMENDED COMPLAINT** |
| v. | ) ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | [Dkt. 17] |

Presently before the court is the Defendant United States's Motion to Partially Dismiss Plaintiff's First Amended Complaint. (Dkt. 17.) Having considered the parties' submissions and heard oral argument, the court grants the motion and adopts the following order.

///

///

///

///

## I. BACKGROUND

Plaintiff Sean Summerville ("Plaintiff"), an inmate at USP Lompoc, brings this action under the Federal Tort Claims Act ("FTCA") against Defendant United States ("Government") asserting claims for medical negligence, negligent hiring/retention, negligent supervision, negligent training, and intentional infliction of emotional distress in connection with medical treatment Plaintiff received while at USP Lompoc.  (*See* Dkt. 15, First Amend. Compl. ("FAC").)

Plaintiff alleges that on January 28, 2017, he "began experiencing stomach pains following a four-day punishment for fighting." (*Id.* ¶ 8.)  Dr. Jaspal Dhaliwal gave Plaintiff a routine physical and prescribed ibuprofen for pain in Plaintiff's knee and stomach. (*Id.* ¶ 11.)  Plaintiff requested an x-ray of his stomach, "but Dr. Dhaliwal asserted that an x-ray was not necessary." (*Id.* ¶ 12.)  Plaintiff alleges that "[f]rom early February 2017, to late August 2017, [Plaintiff] visited the Medical Center approximately four to five times per month complaining of stomach pain." (*Id.* ¶ 14.)  During these visits, Plaintiff "saw Dr. Dhaliwal approximately two to three times . . . and was otherwise seen by Nurse Ellen Fernando [ ]." (*Id.* ¶ 15.)  According to Plaintiff, the "only action taken by Nurse Fernando or Dr. Dhaliwal during this time was to prescribe [Plaintiff] [ ] more ibuprofen." (*Id.* ¶ 16.)  Plaintiff alleges that he "repeatedly requested that an x-ray of his stomach be taken, and each request was denied." (*Id.* ¶ 17.)

On August 20, 2017, Plaintiff "began to suffer from an upper respiratory illness," and as a result, "was unable to ingest food." (*Id.* ¶¶ 18, 19.)  Plaintiff asked Nurse Fernando whether "it was safe to continue taking ibuprofen on an empty stomach," "Nurse Fernando . . . assured him that he could keep taking the ibuprofen." (*Id.* ¶ 21.)  On August 22, 2017, Plaintiff was not "feeling well" and was seen by Nurse Fernando and Dr. William Watson. (*Id.* ¶ 23.)  Plaintiff informed the providers that "he was continuing to take ibuprofen and was not eating." (*Id.* ¶ 24.)  Plaintiff alleges that he was "sent away with more ibuprofen and not given any x-ray." (*Id.* ¶ 25.)

On or about August 24, 2017, at approximately 3:00 a.m. or 4:00 a.m., a Corrections Officer "noticed that [Plaintiff] was sweating, shaking, hunched over in pain with his head in his lap, and that [Plaintiff] had removed all his clothes and appeared delirious." (*Id.* ¶ 29.) Plaintiff was taken to a hospital "where he was immediately given an x-ray." (*Id.* ¶ 30.) "The x-ray results showed that [Plaintiff] had a perforated ulcer on his small intestine," and was "immediately admitted for emergency surgery." (*Id.* ¶¶ 32, 33.) During surgery, Plaintiff's gallbladder was removed. (*Id.* ¶ 34.) Plaintiff alleges that he "continues to experience excruciating pain whenever he eats or eliminates" and "requires pain medication and anti-depressants to cope with his stomach pain." (*Id.* ¶¶ 36, 37.)

On January 31, 2019, Plaintiff timely filed a Claim for Damage, Injury, or Death with the Bureau of Prisons. (Dkt. 18, Request for Judicial Notice ("RJN"), Ex. A.)[1] On December 1, 2020, Plaintiff filed this action. (*See* Dkt. 1.) On May 24, 2021, Plaintiff filed a First Amended Complaint. (*See* Dkt. 15.) The Government presently moves to dismiss portions of Plaintiff's FAC under Federal Rules of Civil Procedure, Rule 12(b)(1) and 12(b)(6). (Dkt. 17, Motion to Dismiss ("MTD").) Specifically, the Government moves to dismiss the Second through Fourth causes of action based on the discretionary function exception of the FTCA and for failure to exhaust administrative remedies. (*See id.*) The Government also moves to dismiss the Fifth cause of action for failure to state a claim and failure to exhaust administrative remedies.

---

[1] The court grants the Government's unopposed Request for Judicial Notice of the Claim for Damage, Injury, or Death Plaintiff submitted to the Federal Bureau of Prisons. (Dkt. 18, Ex. A.) Courts "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see also* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a complaint may be dismissed for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction. *See Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000).

### B. Rule 12(b)(6)

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id.* at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id.* at 678 (citations and internal quotation marks omitted).

## III. DISCUSSION

### A. Discretionary Function Exception under 28 U.S.C § 2680(a)

The Government contends that Plaintiff's claims of negligent hiring/retention, negligent supervision, and negligent training are based on discretionary functions jurisdictionally barred under the FTCA's discretionary function exception. (MTD at 5-12.) Plaintiff argues that BOP Program Statements "6010.05, 6013.01, and 6027.02 direct mandatory and specific action regarding hiring/retention, supervision, and training of

4

BOP health care providers," and therefore, the discretionary function exception does not apply. (Dkt. 19, Opp. at 5.)

"The FTCA waives the government's sovereign immunity for tort claims arising out of negligent conduct of government employees acting within the scope of their employment." *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008). Under the discretionary function exception, however, the government retains sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). In essence, "the 'discretionary function' exception insulates certain governmental decisionmaking from judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011) (internal quotations omitted).

The Supreme Court has established a two-step inquiry to determine whether the discretionary function exception applies. *See Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). "First, a court examines whether the government's actions are 'discretionary in nature, acts that involv[e] an element of judgment or choice.'" *Chadd v. United States*, 794 F.3d 1104, 1109 (9th Cir. 2015), *cert. denied* 136 S. Ct. 2008 (2016) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). "If there is . . . a statute or policy directing mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee has no rightful option but to adhere to the directive." *Id.* (quoting *Terbush*, 516 F.3d at 1129). Second, "a court must determine whether that judgment is of the kind that the discretionary function was designed to shield." *Berkovitz*, 486 U.S. at 536. "To survive a motion to dismiss, [a plaintiff] must 'allege facts which would support a finding that the challenged actions are not the kind

5

of conduct that can be said to be grounded in the policy of the regulatory regime." *Terbush*, 516 F.3d at 1130 (emphasis omitted) (quoting *Gaubert*, 499 U.S. at 324-25).

BOP Program Statement 6010.05 provides, in relevant part, that the Clinical Director "is responsible for oversight of the clinical care provided at the institution" and "will provide the following supervisory functions," "[a]t a minimum," "[r]eview at least two health records, per provider, of the patients evaluated by the day shift clinical staff . . . at the end of each workday." (FAC ¶¶ 50, 51; Ex. A at 7.) The phrases "will provide" and "at a minimum" indicate that the directive is mandatory and leaves no element of judgment or choice. The Clinical Director has no rightful option to not review any health records of a provider at the end of each workday or to conduct a review of less than two health records per provider on a given workday. The BOP Program Statement "specifically prescribes a course of action for an employee to follow"—a Clinical Director must review "at a minimum" two health records per provider—"such that the employee has no rightful option but to adhere to the directive." *Myers*, 652 F.3d at 1029 (quoting *Berkovitz*, 486 U.S. at 536) (holding that provision "shall ensure that plans are reviewed and accepted prior to issuing the Notice to Proceed" was "unambiguously mandatory"). Therefore, conduct relating to BOP Program Statement 6010.05 does not fall within the discretionary function exception and is not jurisdictionally barred.

Plaintiff also alleges that Program Statements 6013.01 and 6027.02 are mandatory directives. Plaintiff argues Program Statement requiring that "[w]hen incidents or errors occur, the [Health Services Administrator] will conduct a coordinated review to: identify causes; prevent repetition; and minimize the financial impact of any litigation," is a mandatory directive and the Government's failure to conduct the review caused Plaintiff's injuries. (*Id.* ¶¶ 53, 54; Ex. B.) However, unlike Program Statement 6010.05, Program Statement 6013.01 does not specifically prescribe a course of action because the determination of an "incident" and "error" is left to the BOP's discretion. Program

6

Statement 6027.02 requiring "an intense review of the health care the practitioner provided" is also insufficiently specific. (*Id.*, Ex. C.)  The Program Statement leaves to the BOP's discretion the determination of when a "deficit" exists and the nature of the "intense review" to be conducted.  Conduct relating to Program Statements 6013.01 and 6027.02 are therefore not mandatory at step one of the discretionary function analysis.

Under the second prong of the discretionary function analysis, it is a well-established principle that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield."  *Miller v. United States*, 992 F.3d 878, 886 (9th Cir. 2021) (quoting *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000)).  Here, BOP Statement 6013.01 involves policy considerations related to risk management "[w]hen incidents or errors occur." (FAC, Ex. B at 10.)  Similarly, BOP Statement 6027.02 involves policy considerations regarding employees' qualifications and training.  (*Id.*, Ex. C at 13.)  These discretionary policy considerations are generally of the type courts have found Congress intended to shield.  *See Vickers*, 228 F.3d at 950 (collecting cases).

Plaintiff's claims related to BOP Statements 6013.01 and 6027.02 are subject to the discretionary function exception of the FTCA and are hereby dismissed for lack of subject matter jurisdiction.

### B.  FTCA Exhaustion

The Government next argues that Plaintiff failed to exhaust administrative remedies under the FTCA for causes of action Two through Five because Plaintiff's claim to the BOP alleged that Plaintiff was injured due to "inadequate medical attention and treatment" and was therefore insufficient to place the BOP on notice that negligent hiring, retention, supervision, or training, contributed to Plaintiff's injury.  (MTD at 12-13; *see* RJN, Ex. A.)  Plaintiff argues that the Government was "reasonably notified" because the claim to the BOP described "his repeated complaints of stomach pain to specific BOP medical providers and their subsequent failure to adequately treat

7

Plaintiff." (Opp. at 12.) Plaintiff further argues that, as to the intentional infliction of emotional distress claim, "the claim reflected a clear abuse of authority by BOP medical providers who intentionally or recklessly ignored Plaintiff's complaints and failed to diagnose or treat his stomach pain." (*Id.* at 12.)

The FTCA provides, in pertinent part: "An action shall not be instituted upon a claim against the United States for money damages for injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency . . . ." 28 U.S.C. § 2675(a). The requirement of an administrative claim is jurisdictional and "must be strictly adhered to." *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000) (quoting *Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992)). "But the prerequisite administrative claim need not be extensive[;] [t]he person injured, or his or her personal representative, need only file a brief notice or statement . . . containing a general description of the time, place, cause and general nature of the injury and the amount of compensation demanded." *Goodman v. United States*, 298 F.3d 1048, 1055 (9th Cir. 2002).

Here, Plaintiff's claim to the BOP provided a detailed description of the time, place, cause, and nature of his injury. (RJN, Ex. A.) Plaintiff's claim included a five-page attachment describing the incident; Plaintiff provided the BOP the date on which he began to suffer stomach pains, informed the BOP of multiple visits per month for a seven-month period seeking medical treatment, the names of three providers who provided medical care, Plaintiff's specific requests to the providers, those providers responses, and a description of his injury. The Government makes the argument that the detailed submission did not provide adequate notice of a potential BOP policy violation. The court rejects the argument for two reasons. First, the five-page summary evidences a potential pattern of alleged failures to provide adequate medical care over a period of time by three different providers and, therefore, provides reasonable notice that there may be a systemic issue, including supervision and training, with providing medical care. Second, in the context of this matter, it is unduly burdensome to require a claimant

8

at the early stage of submitting a claim for damages before the agency to have knowledge of particular policies that might bear on the subject given that such claimant would not have access to discovery at that time. Given the submission here, the BOP was on fair notice to consider issues related to negligent supervision and training. *See Goodman*, 298 F.3d at 1055 ("[A] plaintiff's administrative claims are sufficient even if a separate basis of liability arising out of the same incident is pled in federal court.").

For the same reasons, Plaintiff's claim of intentional infliction of emotional distress arising out of the same incident described in the submission to the BOP, was also fairly presented and therefore also exhausted. *See id.* The court concludes that Plaintiff exhausted his administrative remedies before the BOP for the second through fifth causes of action.

## C. Sufficiency of Claims Two through Five under Rule 12(b)(6)

The Government next argues that Plaintiff's claims for negligent hiring/retention, negligent supervision, negligent training, and intentional infliction of emotional distress are insufficiently pled under Rule 12(b)(6). The Government argues that Plaintiff has failed to (1) set forth factual allegations supporting the assertion that BOP Program 6010.05 was violated, (2) how any purported violation applies to claims of negligent hiring/retention, supervision, or training, and (3) set forth a causal connection between any violation of BOP Program Statement 6010.05 and his claimed injury in this case. (MTD at 9.)

Plaintiff's single allegation of a violation of Program Statement 6010.05 is as follows: The Government "breached the directive prescribed by the BOP Program Statement 6010.05 by failing to review the qualifications of Doctors Dhaliwal and Watson, by failing to evaluate cases as prescribed in the statement, and by failing to arrange face-to-face discussions . . . ." (FAC ¶¶ 51, 52.) This allegation is repeated in claims Two through Four. (*Id.* ¶¶ 64, 76.) However, this allegation insufficiently sets forth Plaintiff's theories of negligent hiring/retention, supervision, or training as it relates

9

to a breach of BOP Program Statement 6010.05.  The court notes that the Program Statement appears to only address supervision.  (FAC, Ex. A at 7 (stating that "the CD or contract physician will provide the following *supervisory functions* . . . .").)  Plaintiff has also insufficiently alleged causation.  Plaintiff has not alleged how any purported BOP Program Statement violation plausibly caused his claimed injuries.

Lastly, Plaintiff's theory for intentional infliction of emotional distress is also insufficiently pled.  "A cause of action for IIED requires proof of: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the severe emotional distress."  *Crouch v. Trinity Christian Ctr. of Santa Ana, Inc.*, 39 Cal. App. 5th 995, 1007 (2019), review denied (Dec. 11, 2019). Plaintiff alleges that the Government "abused its position of authority over Plaintiff by refusing to treat and examine Plaintiff, with knowledge that Plaintiff had no other alternative venue for medical treatment since he was an inmate at a United States Prison."  (FAC ¶ 87.)  To the extent that Plaintiff seeks to pursue his claim based on abuse of authority, Plaintiff must provide sufficient factual allegations plausibly alleging that the Government (1) abused its position which gave it power over Plaintiff's interest; (2) knew that Plaintiff was susceptible to injuries through mental distress, or (3) acted intentionally or unreasonably with the recognition that the acts were likely to result in illness through mental distress.  *See Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1122 (1988).

**IV. CONCLUSION**

Plaintiff's claims related to BOP Statements 6013.01 and 6027.02 are subject to the discretionary function exception of the FTCA and are hereby dismissed for lack of subject matter jurisdiction.

Plaintiff's claims related to BOP Statement 6010.05 are dismissed with leave to amend.  Plaintiff's fifth cause of action for intentional infliction of emotional distress is dismissed with leave to amend.

Any amendment must be filed without fourteen days from the date of this Order.

**IT IS SO ORDERED.**

Dated: July 20, 2021

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE